UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 19-174 |
| PALMA JEFFERSON, JR. | SECTION "R" |

## ORDER AND REASONS

Defendant Palma Jefferson Jr. moves *pro se* to vacate his sentence under 28 U.S.C. § 2255.[1] The government opposes the motion.[2] For the following reasons, the Court denies defendant's motion.

## I. BACKGROUND

On April 29, 2019, a confidential source called the Jefferson Parish Sheriff's Office ("JPSO") with information about a large shipment of cocaine from Baton Rouge to the New Orleans Metropolitan Area.[3] The informant told JPSO Detective Benjamin Jones that a person would be traveling on Interstate 10 in a green Chevrolet Avalanche that had a New Orleans Saints emblem sticker between the hours of 12:30 and 1:00 p.m.[4] JPSO officers

---

1   R. Doc. 255.
2   R. Doc. 257.
3   R. Doc. 67-2 at 4; R. Doc. 67-3 at 1.
4   R. Doc. 67-2 at 4.

initiated surveillance along Interstate 10, but did not observe the Avalanche.[5] Detective Jones then contacted the confidential source again, who told him that the cocaine was dropped off to an individual going by the name of "PJ" who resided in Riverside.[6]

Detective Jones testified that he recognized the location as the "Riverside Drive Apartments," an area where he had previously worked. He said that the source reported that "PJ" used an apartment there as a "stash house," but that his drug transactions occurred within the city of New Orleans—at the 2300 block of Mazant Street.[7] The source also told Detective Jones that "PJ" is originally from that area of Mazant Street.[8] Using the videocall feature of the WhatsApp application, the tipster gave Detective Jones step-by-step instructions on how to locate the apartment on Riverside Drive.[9] Detective Jones stated that the informant guided him to a parking lot, told him to walk up a specific staircase, and told him that the apartment would be on the left-hand side with a blue blanket covering the window. Detective Jones located the apartment, observed the blue blanket in the window, and identified it as 6220 Riverside Drive, Apartment 555. The

---

[5]     *Id.*
[6]     *Id.*
[7]     R. Doc. 95 at 3.
[8]     *Id.*
[9]     *Id.*

tipster, who remained on the videocall, confirmed that "PJ" resided there and that it was the intended destination for the cocaine shipment.[10]

Detective Jones asked a fellow officer, Detective Paul Carmouche, to run a search for the Riverside address on law enforcement databases.[11] Detective Carmouche discovered that it was registered to "Palma Jefferson, Jr." which was consistent with the nickname, "PJ," provided by the informant. Further, Detective Carmouche discovered that Jefferson had two other registered addresses, including one on the 2300 block of Mazant Street—the same area that "PJ" was from and where he did drug transactions, according to the source.[12] Detective Jones testified that he obtained Jefferson's driver's license photograph and disseminated it to his fellow officers for identification purposes.[13] In his arrest report, Detective Jones also stated that the informant positively identified "PJ" as the person in the photograph.[14]

Detective Jones testified that the source also provided information regarding PJ's criminal history.[15] Specifically, the informant stated that "PJ"

---

[10] *Id* at 3-4.
[11] *Id.* at 4.
[12] *Id.*
[13] *Id.*
[14] *Id.*; *see also* R. Doc. 67-2 at 4.
[15] R. Doc. 95 at 4.

had been the subject of a drug trafficking investigation by the Kenner Police Department ("KPD"), that KPD had seized a Corvette from "PJ," and that the vehicle was on display at the department.[16] Detective Jones asked Detective Carmouche, who had previously worked at KPD, to contact that department, which confirmed that it had a Corvette that they had seized from Jefferson in connection with a drug trafficking investigation.[17] Through the officers' database search, Detectives Jones and Carmouche also discovered that Jefferson had, a few months before the events at issue, completed a term of parole for a narcotics trafficking conviction and for possession of a firearm by a convicted felon.[18]

With this information, investigators began to establish surveillance on the apartment.[19] At approximately 7:15 a.m. on April 29, 2019, Detective Jones saw Jefferson and his daughter exit the apartment and walk toward their vehicle in their parking lot.[20] They decided to stop Jefferson, at which point they read Jefferson his *Miranda* rights.[21] Although Jefferson first denied that that he left the apartment, he then admitted to possessing a large

---

16  *Id.* at 5.
17  *Id.*
18  *Id.*
19  R. Doc. 67-2 at 4.
20  *Id.*
21  *Id.*

4

quantity of cocaine and a firearm inside it.[22] Upon learning that Jefferson's girlfriend remained in the apartment, officers entered to secure the area and prevent the destruction of evidence.[23] JPSO detectives prepared an application for a search warrant,[24] which was authorized at 9:07 a.m.[25] After the search warrant was authorized, investigators began to search Jefferson's apartment, where they found cocaine, methamphetamine pills, heroin, and a firearm.[26] Jefferson, his girlfriend, and his daughter were brought in for questioning, and Jefferson gave a videotaped statement admitting that all the evidence seized from Apartment 555 belonged to him.[27]

Before trial, Jefferson moved to suppress statements made during the initial stop, the evidence obtained during the search of his apartment, and the statements he made following his arrest.[28] He argued that officers searched his apartment without a warrant, specifically citing time stamps on photos taken inside his apartment marked as early 8:18 a.m.[29] Jefferson also argued that he was the subject of a *de facto* arrest when the police stopped

---

[22]   *Id.*; R. Doc. 67-3 at 2.
[23]   *Id.*
[24]   R. Doc. 67-3 at 1-3.
[25]   *Id.* at 4-8.
[26]   R. Doc. 67-2 at 5-7.
[27]   R. Doc. 67-4.
[28]   *See* R. Doc. 67.
[29]   R. Doc. 67-1 at 8-11; *see also* 67-5 at 2.

5

him and his daughter, handcuffed him, and detained him while they searched his apartment.[30] Jefferson additionally challenged the use of his initial confession that cocaine and a gun were in the apartment and claimed that he never made that statement.[31] Last, Jefferson argued that the search warrant affidavit and the arrest warrant affidavit included material misrepresentations and omissions, and that he was therefore entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).[32]

This Court denied Jefferson's request for a *Franks* hearing, finding that he had submitted no evidence challenging the adequacy of the affidavits supporting the search warrant or arrest warrant, but it held a limited hearing related solely to the issue of whether the Government's asserted factual basis supported reasonable suspicion to perform an investigative stop of Jefferson.[33] After the hearing, the Court denied Jefferson's motion to suppress in its entirety, finding that officers initially performed an investigative stop, not an arrest, that there was reasonable suspicion to stop Jefferson,[34] and that the pictures timestamped before the issuance of the

---

[30] R. Doc. 67-1 at 7-8.
[31] *Id.* at 11.
[32] *Id.*
[33] R. Doc. 77 at 1.
[34] R. Doc. 95 at 11-26.

6

warrant were explained by a failure to change the internal clock of the camera to match Daylight Savings Time.[35]

On April 13, 2022, a jury convicted Jefferson of possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(i) (Count 1), possession with the intent to distribute 500 grams or more of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii)(II) (Count 2), possession with intent to distribute 500 grams or more of a mixture of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) (Count 3), possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) (Count 4), and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 6).[36]

The Court sentenced Jefferson to 180 months' imprisonment, consisting of concurrent terms of 180 months on Counts One, Two, and Three; 60 months on Count Four; and 120 months on Count Six.[37] The Court also sentenced Jefferson to a term of supervised release of five years, consisting of concurrent terms of four years on Counts One and Two, five

---

[35] *Id.* at 27-28.
[36] R. Doc. 223 at 1-2.
[37] *Id.* at 3.

7

years on Count Three, and two years on Counts Four and Six.[38] Jefferson appealed his conviction and sentence, challenging the Court's denial of his motions to suppress, its calculation of the relevant drug quantities, and its application of a sentencing enhancement for possession of a firearm. *United States v. Jefferson*, 89 F.4th 494, 498 (5th Cir. 2023). The U.S. Court of Appeals for the Fifth Circuit affirmed this Court's denial of the motion to suppress and its denial of a *Franks* hearing, as well as Jefferson's conviction and sentence. *Id.* at 506.

On February 5, 2024, Jefferson moved to produce grand jury material related to his indictment and discovery documents from his trial.[39] Jefferson also moved to compel the Government to show cause for failing to send him a response to the motion for documents.[40] Pursuant to *Castro v. United States*, this Court notified Jefferson of its intent to recharacterize his post-conviction motion for discovery as a habeas petition under 28 U.S.C. § 2255, warned Jefferson of its consequences, and gave him an opportunity to withdraw the motion.[41] 540 U.S. 375 (2003).

---

[38]  *Id.*
[39]  R. Docs. 247 & 248.
[40]  R. Doc. 251.
[41]  R. Doc. 252.

Jefferson thereafter moved to vacate his sentence under 28 U.S.C. § 2255, arguing that he was provided ineffective assistance of counsel because of his attorney's failure to "properly articulate" that evidence seized at his apartment should have been suppressed due to the officers' warrantless search of his apartment and alleged misrepresentations and omissions in the search warrant and arrest warrant.[42] In response, the government asserted that Jefferson failed to show he was provided ineffective assistance of counsel because the arguments he raised in his Section 2255 motion had already been litigated.[43]

The Court considers the parties' arguments below.

## II.  LEGAL STANDARD

Section 2255 of Title 28 of the United States Code provides that a federal prisoner serving a court-imposed sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Only a narrow set of claims are cognizable on a Section 2255 motion. The statute identifies four grounds on which the motion may be made:

---

[42]   R. Doc. 255.
[43]   R. Doc. 257.

> (1) [T]he sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack."

*United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (first citing 28 U.S.C. § 2255; and then citing *United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992)). A claim of error that is neither constitutional nor jurisdictional is not cognizable in a Section 2255 proceeding unless the error constitutes a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962) (internal quotation marks omitted)).

When a prisoner files a Section 2255 motion, the district court must first conduct a preliminary review. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the Court must order the Government to file a response or to take other appropriate action." *Id.* The Court may then order the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. Rules Governing Section 2255 Proceedings, Rules 6 & 7.

After reviewing the Government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must determine whether an evidentiary hearing is warranted. *Id.*, Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No evidentiary hearing is required if the prisoner fails to produce any "independent indicia of the likely merit of [his] allegations." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (citing *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).

The petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980) (citation omitted). For certain "structural" errors, relief follows automatically once the error is proved. *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993). For other "trial" errors, the Court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Id.* at 633-38 (citation omitted); *see also United States v. Chavez*, 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht* in a section 2255 proceeding). If the court finds that the prisoner is entitled to relief, it must "vacate and set the judgment aside" and "discharge

11

the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## III. DISCUSSION

Jefferson's ineffective assistance of counsel claim fails. To prevail on a claim of ineffective assistance of counsel, the petitioner must demonstrate (1) that counsel's performance was deficient, and (2) that the deficiency resulted in prejudice. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). A defendant establishes deficient performance by "show[ing] the counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A defendant establishes prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

On federal habeas review, "a court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone,* 535 U.S. 685, 701 (2002). Federal habeas courts "will not find

inadequate representation merely because, with the benefit of hindsight, [they] disagree with counsel's strategic choices." *Green v. Johnson*, 116 F. 3d 1115, 1122 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 689-90).

Jefferson argues that his counsel was ineffective by "fail[ing] to properly articulate" that the evidence obtained during the search of his apartment should be suppressed because (1) the officers lacked probable cause to detain him and search his apartment,[44] and (2) that timestamps on the photos taken from his apartment demonstrate that the officers entered and searched his apartment prior to the issuance of a search warrant.[45] But Jefferson's defense counsel repeatedly raised these arguments in pretrial motions,[46] at trial,[47] and again on appeal, which this Court[48] and the Fifth Circuit found to be meritless. *See Jefferson*, 89 F. 4th at 502-05.

Post-indictment, Jefferson sought to suppress all evidence obtained during the search of his apartment based on the same arguments.[49] This Court found that Jefferson's suspicious behavior and information from the confidential source provided reasonable suspicion to stop Jefferson,[50] and

---

44   *Id.* at 10-14.
45   R. Doc. 255-1 at 8-10.
46   R. Doc. 67, 74.
47   *See* R. Doc. 241 at 105-14.
48   *See* R. Doc. 95.
49   R. Doc. 67-1 at 8-13.
50   R. Doc. 95 at 20-26.

13

that Jefferson's admission that his apartment contained drugs and a firearm provided probable cause for the search.[51] On appeal, the Fifth Circuit affirmed both rulings. *See id.* at 502-03. Additionally, this Court found that the earlier timestamps resulted from an administrative failure to set the camera's clock to daylight savings time, not due to an early entry.[52] The Fifth Circuit again affirmed this finding on appeal, *id.* at 504, and held that even if officers began their search before the issuance of a warrant, Jefferson did not "clear the bar to obtaining a *Franks* hearing" because he failed to show that the search warrant itself resulted from a "deliberate falsehood" or "reckless disregard of the truth" in the affidavit, *id.* at 504-05. Moreover, the Fifth Circuit ruled that the evidence resulting from the search would not be suppressed in any event because of the independent source doctrine. *Id.* at 504, n. 2; *see also United States v. Hearn*, 563 F.3d 95, 102 (5th Cir. 2009) (holding that evidence that is "received through an illegal source is considered to be cleanly obtained when it arrives through an independent source" (citation omitted)).

Jefferson makes no argument that defense counsel's assistance fell below any objective standard of reasonableness, *Strickland*, 466 U.S. at 688,

---

[51] *Id.* at 33.
[52] R. Doc. 95 at 28.

14

nor does he even identify how his proposed arguments would differ in any way from those his defense counsel already made. "[I]t is difficult to establish ineffective assistance where counsel's overall performance reflects active and capable advocacy." *Harrington v. Richter*, 562 U.S. 86, 111 (2011). Equally, because the Court and the Fifth Circuit have already determined that Jefferson's earlier, indistinguishable arguments were not meritorious, *see Jefferson*, 89 F. 4th at 503-05, Jefferson fails to show a reasonable probability that the result of the proceeding would have been different with different representation. *Strickland*, 466 U.S. at 694. The Court therefore denies Jefferson's motion to vacate his sentence.

Because Jefferson has failed to produce any independent indicia of the likely merit of his allegations, *see Edwards*, 442 F.3d at 264, he is not entitled to an evidentiary hearing. The record in this case is adequate to dispose fully and fairly of Jefferson's Section 2255 motion.

### A.  Certificate of Appealability

When a district court enters a final order adverse to a petitioner under 28 U.S.C. § 2255, the court must issue or deny a certificate of appealability. Rules Governing Section 2255 Proceedings, Rule 11(a). A court may issue a certificate of appealability only if the petitioner makes "a substantial showing

15

of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The "controlling standard" for a certificate of appealability requires the petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented [are] adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted)).

Jefferson's motion does not satisfy these standards. For the reasons stated in this order, the Court finds that Jefferson's arguments do not amount to a substantial showing that his constitutional rights were compromised, nor would they engender debate among reasonable jurists or deserve encouragement to proceed further. Accordingly, the Court will not issue a certificate of appealability.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Jefferson's motion to vacate his sentence under 28 U.S.C. § 2255. The Court will not issue a certificate of appealability.

New Orleans, Louisiana, this __28th__ day of October, 2024.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE